Beth S. Ginsberg, OSB #070890
beth.ginsberg@stoel.com
Jason T. Morgan, WSBA #38346 (*Pro Hac Vice*)
jason.morgan@stoel.com
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA  98101
Telephone:  (206) 624-0900
Facsimile:  (206) 386-7500

*Attorneys for (Proposed) Intervenor-Defendant Northwest RiverPartners*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| AUDUBON SOCIETY OF PORTLAND, WILDLIFE  CENTER OF THE NORTH COAST, ANIMAL LEGAL DEFENSE FUND, CENTER FOR BIOLOGICAL DIVERSITY, FRIENDS OF ANIMALS, <br><br>  Plaintiffs, <br><br> v. <br><br> U.S. ARMY OF ENGINEERS, U.S. FISH AND WILDLIFE SERVICE, USDA WILDLIFE SERVICES, <br><br>  Defendants. | Case No.: 3:15-cv-00665-MO <br><br> NORTHWEST RIVERPARTNERS' MOTION FOR INTERVENTION PURSUANT TO FED. R. CIV. P.  24 <br> **Expedited Hearing Requested** |

## MOTION TO INTERVENE AND FOR EXPEDITED CONSIDERATION

Northwest RiverPartners ("RiverPartners") respectfully moves to intervene in this lawsuit

as a defendant pursuant to Fed. R. Civ. P. 24(a) and/or (b) and requests that this Court rule on

Page 1   -   NORTHWEST RIVERPARTNERS MOTION FOR INTERVENTION

this motion expeditiously.  The motion is based on RiverPartners' memorandum, set out below, and the accompanying Declaration of its Executive Director, Terry Flores.

Plaintiffs' counsel, Dan Rohlf, represented to the undersigned counsel that Plaintiffs would be filing a motion for preliminary injunction on Monday, April 27th, and would be seeking a hearing on the motion on May 8th.  Mr. Rohlf also indicated that Plaintiffs will oppose RiverPartners' intervention motion.  Counsel for the government, Stephen Finn represents that the government will not oppose this motion.

In order to meaningfully participate in the injunction proceedings, RiverPartners will need expedited consideration of this motion and therefore requests that the Court initiate a phone conference on Monday April 27, 2015 to address these timing issues.

Respectfully submitted this 24th day of April, 2015.

*/s/ Beth S. Ginsberg*
Beth S. Ginsberg, OSB #070890
Jason T. Morgan, WSBA #38346 (*Proposed Pro Hac Vice*)

*Attorneys for (Proposed) Intervenor-Defendant*
    *Northwest RiverPartners*

600 University Street, Suite 3600
Seattle, WA 98101
(206) 386-7527
(206) 386-7500 Fax
beth.ginsberg@stoel.com
jason.morgan@stoel.com

Page 2    -    NORTHWEST RIVERPARTNERS MOTION FOR INTERVENTION

## I.  INTRODUCTION

Northwest RiverPartners ("RiverPartners") hereby moves to intervene in this case as a defendant pursuant to Federal Rule of Civil Procedure ("Rule") 24 (a)(2) or, in the alternative, (b).  Plaintiffs in this case have sued the U.S. Army Corps of Engineers ("Corps") challenging what they refer to as narrow or limited analyses under the National Environmental Policy Act ("NEPA") concerning the Corps' decision to control salmon predation by killing double-crested cormorants ("cormorants") near East Sand Island in the Columbia River estuary.

Cormorants feed on salmon and the federal government has literally spent billions of dollars attempting to restore endangered salmon species in the Columbia River Basin.  Plaintiffs challenge a key provision in the Biological Opinion ("BiOp") governing the ongoing operation of the Federal Columbia River Power System ("FCRPS"), which is known as Reasonable and Prudent Alternative ("RPA") 46.  RPA 46 requires the Corps to control salmon predation by, *inter alia*, shooting cormorants and destroying their nests.  Plaintiffs contend that the Corps should have first conducted a broader NEPA analysis to determine whether system-wide structural and operational modifications of the FCRPS could have first been employed to improve salmon populations before resorting to cormorants control.  *See* Dkt 1 ("Complaint") at ¶¶ 1-2. Plaintiffs seek to enjoin the Corps from carrying out the requirements of RPA 46, *and other measures* contained in its 2014 Record of Consultation and Statement of Decision ("ROCASOD") governing the Corps' operation of the federal hydropower system.  Complaint ¶ 149.

RiverPartners -- a broad-based alliance of utilities, businesses, navigational and agricultural interests including the direct users, or the priority customers, of the Bonneville

Power Administration ("BPA")[1]-- has an immediate and direct interest in RPA 46 and, more generally, the BiOp and NEPA analyses governing the ongoing operation of the hydropower system.  Declaration of Terry Flores at ¶¶ 3-4. The relief Plaintiffs seek in this case is an Order: (1) enjoining the Corps from undertaking the directives required of it under RPA 46 (Complaint, Prayer for Relief ¶8); and (2) requiring the Corps to conduct a system-wide NEPA evaluation of operational, structural and other measures it could take, including additional spill, flow and dam breaching or wholesale dam removal, as among the alternatives to cormorants control. Complaint at ¶¶ 87, 155-156.  Contending that the "Corps has a significant interest in operating dams in a way that maximizes revenue generation from power sales" instead of in a way that protects fish (Complaint at ¶ 6), Plaintiffs more broadly also ask this Court to vacate and set aside the Corps' ROCASOD calling for implementation of FCRPS operations consistent with NMFS's 2014 BiOp. Complaint, Prayer For Relief, ¶ 1.

RiverPartners has a significant and protectable interest in the hydrosystem and the power that is generated therefrom.  It also has a direct and immediate interest in the FCRPS BiOp as a whole and is, and has been, a long-time active defendant-intervenor in the lawsuit currently pending in this Court challenging that BiOp.  Flores Decl. at ¶ 4.  RiverPartners' decade-long involvement in the FCRPS BiOp lawsuit stems from its interest in ensuring that the hydrosystem remains intact and fully operational, that dam configurations remain as they are, that unnecessary spill and flow are not implemented as part of any revised BiOp RPA, and that mitigation measures contained in the BiOp's RPA are based on the best science commercially available. Flores Decl. at ¶ 4.  RiverPartners commented on the Draft FCRPS Biological Opinion, on the Corps' proposed avian management measures contained in RPA 46, and on the Corps'

---

[1] BPA transmits and distribute power generated from the FCRPS.

Page 4    -    NORTHWEST RIVERPARTNERS MOTION FOR INTERVENTION

supporting Draft Environmental Impact Statement.  Flores Decl. at ¶ 8.  While RiverPartners supports the governments' avian predation program, it believes it does not address the crisis quickly enough to avert the disaster it portends to the endangered salmon species the government is attempting to protect.  *Id.* at ¶10.

## II.  FACTUAL BACKGROUND

### A.    RiverPartners

RiverPartners is a 501(c)(6) non-profit corporation representing a broad-based alliance of utilities, businesses, navigational and agricultural interests throughout the four Pacific Northwest states bordering the Columbia/Snake rivers.  Flores Decl. at ¶ 3.  RiverPartners is a coalition of more than 100 entities including farmers, industrial facilities, corporations, ports, and public and privately owned utilities.  *Id.*  The alliance formed to ensure that the FCRPS, which provides the region with myriad economic and environmental benefits-- including carbon-free renewable energy, flood control, irrigation, commerce, navigation and recreation-- continues to co-exist with robust, viable and self-sustaining populations of listed salmonids and steelhead. *Id.* at ¶ 4. RiverPartners is a defendant-intervenor in *National Wildlife Federation, et al., v. National Marine Fisheries Service,* No.3:01-cv-0640-SI, currently pending in this Court before Judge Simon. *Id.* RiverPartners has also intervened in other cases brought by allies of Plaintiffs' challenging aspects of the FCRPS BiOp and seeking to alter the operation of the power projects. *Id.* at ¶ 9.

### B.    The Relief Requested By Plaintiffs In This Lawsuit Will Harm RiverPartners' Members' Interests

Plaintiffs seek an Order enjoining the Corps from carrying out the measures it committed to take to improve salmon returns in RPA 46, and in its ROCASOD more generally. *See supra* at 3; Complaint at ¶¶ 149, 156. The ROCASOD is the action through which the Corps documented

Page 5    -    NORTHWEST RIVERPARTNERS MOTION FOR INTERVENTION

its decision to implement the measures contained in the RPA for the FCRPS BiOp, including, but not limited to, RPA 46. *See* ROCASOD dated February 14, 2014, available at https://www.salmonrecovery.gov/. The Corps operates and maintains the hydropower projects comprising the FCRPS for multiple purposes, including flood control, navigation, hydropower generation, recreation, fish and wildlife, irrigation and recreational interests. *Id*. at 3.

Among the many measures the Corps committed to undertake in furtherance of the 2014 Supplemental FCRPS BiOp are the installation and operation of surface passage structures, bypass improvements, use of spill, fish transport, management of water releases from storage reservoirs for flow augmentation and water temperature moderation. *Id*. at 4, n.9. As explained in the ROCASOD, these efforts focus on actions to improve the survival of listed salmon and steelhead at the dams to meet adult and juvenile performance standards. They also focus on expanding control of avian predators, improving estuary habitat, and implementing hatchery reform actions. *Id.*

Plaintiffs, however, believe these measures are insufficient and are suing the Corps to require the agency to conduct a comprehensive NEPA analysis encompassing a broader suite of alternatives to RPA 46 and the other measures implemented through the ROCASOD, including more spill, more flow, reservoir drawdown, and presumably dam breaching. Complaint at ¶¶ 87, 155-156. Invalidation of the Corps' ROCASOD would call into question the legal viability of the FCRPS RPA, including any component part thereof. RiverPartners supports the FCRPS BiOp and the ROCASOD as a whole, and the relief Plaintiff seeks in this lawsuit would invalidate and further enjoin the Corps from undertaking many of the actions implemented therein. Flores Decl. at ¶ 7.

In addition, RiverPartners' members, and their constituents, finance the mitigation measures contained in the BiOp and the Corps' ROCASOD. *Id.* The additional measures Plaintiffs prefer as part of the ROCASOD would be similarly paid for by RiverPartners. *Id.* RiverPartners' members also rely on the FCRPS for electricity. *Id.* at ¶ 5. Some of RiverPartners' members are public utilities that are preference customers under the Pacific Northwest Electric Power Planning and Conservation Act, of the Bonneville Power Agency ("BPA"), which markets and transmits hydropower generated at the FCRPS projects. *Id.* RiverPartners members also include privately held utilities whose customers similarly benefit from federal hydropower. *Id.*

RiverPartners is opposed to more flow and spill and reservoir drawdown because such measures have not been shown to be scientifically valid, have not been shown to be helpful to salmon survival and recovery, and because they would reduce the clean, renewable electricity produced by the FCRPS and make the power it generates far more expensive to purchase and use and increase carbon emissions as replacement resources would be fossil fuel- based. Flores Decl. at ¶¶ 4,7, 10.

## III.  ARGUMENT

### A.    RiverPartners is Entitled to Intervention As of Right

Pursuant to Rule 24(a), RiverPartners is entitled to intervention as of right to defend its direct interests in the FCRPS RPA generally and RPA 46 specifically.  The Ninth Circuit has adopted a four-part test to determine whether a party should be permitted to intervene as of right: (1) the motion must be timely; (2) the movant must claim a "significantly protectable" interest relating to the property or transaction that is the subject of the action; (3) the movant must be so situated that the disposition of the action may, as a practical matter, impair or impede the

Page 7    -    NORTHWEST RIVERPARTNERS MOTION FOR INTERVENTION

movant's ability to protect that interest; and (4) the movant's interest must not be adequately represented by the existing parties to the action. *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (*en banc*). The Ninth Circuit applies this test "'broadly in favor of proposed intervenors.'" *Id*. at 1179 (*quoting United States v. City of L.A.*, 288 F.3d 391, 397 (9th Cir. 2002)). As discussed below, RiverPartners meets each of these requirements.

### 1.    RiverPartners' Motion Is Timely

In evaluating the timeliness of a motion to intervene, courts in the Ninth Circuit consider three factors:  (1) the stage of the proceedings; (2) the prejudice to the other parties; and (3) the reasons for and length of the delay, if any. *Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1319 (9th Cir. 1997). This action is still in its very preliminary stages:  the Complaint was filed on April 20, 2015 and this motion was filed only four days later on April 24. The Corps has not yet filed an answer and the administrative record has not been lodged. Counsel for Plaintiffs informed RiverPartners' counsel that Plaintiffs plan to file their motion for preliminary injunction on April 27, 2015 and will request a hearing date of May 8, 2015. RiverPartners will agree to any proposed schedule for briefing that the existing parties to the case agree upon. Therefore, no prejudice, delay, or inefficiency will result.

### 2.    RiverPartners Has A Significant Protectable Interest In the Challenged Agency Decisions

Whether the moving party demonstrates sufficient interest to intervene is a "practical, threshold inquiry" for which "[n]o specific legal or equitable interest need be established." *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993), *aff'd sub nom. Greene v. Babbitt*, 64 F.3d 1266 (9th Cir. 1995). As noted by the court in *City of Los Angeles*:

> A liberal policy in favor of intervention serves both efficient resolution of issues and broad access to the courts. By allowing parties with a practical interest in the outcome of a particular case

Page 8    -    NORTHWEST RIVERPARTNERS MOTION FOR INTERVENTION

>to intervene, we often prevent or simplify future litigation
>involving related issues; at the same time, we allow an additional
>interested party to express its views before the court.

288 F.3d at 397-98 (internal quotation marks and citations omitted).  Consequently, the interest

requirement is "primarily a practical guide to disposing of lawsuits by involving as many

apparently concerned persons as is compatible with efficiency and due process." *Id*. at 398

(internal quotation marks and citation omitted); *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir.

1967).  The interest at issue "need not be protected by the statute under which the litigation is

brought to qualify as 'significantly protectable'" so long as "the interest is protectable under

some law, and … there is a relationship between the legally protected interest and the claims."

*Wilderness Soc'y*, 630 F.3d at 1179 (internal quotation marks and citation omitted).

As explained above, RiverPartners has a direct and immediate interest in the RPAs that

Plaintiffs seek to invalidate and enjoin and has actively litigated in defense of those measures in

the BiOp lawsuit now pending before Judge Simon.  Through its participation in that lawsuit,

RiverPartners seeks to uphold the FCRPS BiOp and RPA in their entirety.  This lawsuit seeks to

enjoin RPA 46 and the Corps' other FCRPS actions set forth in the ROCASOD, and thus to

invalidate key portions of the underlying FCRPS BiOp which RiverPartners is actively defending

in *National Wildlife Federation v. National Marine Fisheries Service*,  Case No. 3:01-cv-0640-

SI.

In addition to RiverPartners' direct interest in the FCRPS BiOp and its RPAs,

RiverPartners has a direct and immediate interest in the electricity that the hydropower system

generates.  Some of its members are preference customers of BPA who depend on the FCRPS

for their power.  Enjoining the Corps from implementing the RPA measures is likely to lead to

other measures that, if implemented, would make the power RiverPartners' members rely on

more expensive and carbon-emitting resources to purchase and use.  These are the sorts of interests courts routinely find protectable under this prong of the intervention standard.

Given the significant overlap between this case and the case pending before Judge Simon, to which RiverPartners is a defendant/intervenor, and given that RiverPartners has successfully intervened in a variety of other related FCRPS lawsuits brought by National Wildlife Federation and their allies over the years (Flores Declaration at ¶¶ 4, 9), this Court need not strain to easily find that RiverPartners has a protectable interest in the actions challenged in this lawsuit.

### 3.    Disposition of This Case in Plaintiffs' Favor Would Harm RiverPartners' Interests

Intervention as of right is particularly appropriate where, as here, the relief sought is injunctive.  *See City of L.A.*, 288 F.3d at 399; *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983) (where relief sought by plaintiffs will have direct, immediate, and harmful effects upon a third party's legally protectable interests, the party satisfies the "interest" test), *aff'd sub nom. Sagebrush Rebellion, Inc. v. Hodel*, 790 F.2d 760 (9th Cir. 1986).

As demonstrated above, the relief sought in this case would directly harm RiverPartners' interests in the related case pending before Judge Simon to which RiverPartners is a defendant. RiverPartners' members have a direct interest in ensuring that the FCRPS BiOp RPA is implemented in its current state, and not enjoined and subsequently altered.  Under these circumstances, intervention as of right are particularly compelling.  *United States v. Oregon*, 839 F. 2d 636,638  (9th Cir. 1988)(intervention required in circumstances where" as a practical matter, this litigation may impair appellants' ability to obtain effective remedies in later litigation"). Intervention as of right should be granted under these circumstances.

Page 10  -   NORTHWEST RIVERPARTNERS MOTION FOR INTERVENTION

### 4.    RiverPartners' Interests Are Not Adequately Represented by the Corps

An applicant-intervenor's burden in showing inadequate representation is minimal.

*Forest Conservation Council v. U.S. Forest Serv.,* 66 F.3d 1489, 1498-99 (9th Cir. 1995).

RiverPartners' interests are sufficiently distinct from those of the Corps.  The burden of

demonstrating inadequate representation is minimal, even in a NEPA case like this one.  Indeed,

in a fairly recent *en banc opinion,* the Ninth Circuit has re-emphasized that "a putative intervenor

will generally demonstrate sufficient interest for intervention of right in a NEPA action, as in all

cases, if it will suffer a practical impairment of its interests as a result of the pending litigation."

*Wilderness Societ,y* 630 F.3d at 1180.

RiverPartners need only show that its interests are sufficiently different from the existing

parties such that their representation "may be" inadequate.  *Trbovich v. United Mine Workers of*

*Am.*, 404 U.S. 528, 538 n.10 (1972); *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 823

(9th Cir. 2001); *Nuesse*, 385 F.2d at 703.

The Court must consider:

> "(1) whether the interest of a present party is such that it will
> undoubtedly make all the intervenor's arguments; (2) whether the
> present party is capable and willing to make such arguments; and
> (3) whether the would-be intervenor would offer any necessary
> elements to the proceedings that other parties would neglect."

*City of L.A.*, 288 F.3d at 398 (*quoting Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 838

(9th Cir. 1996)).

RiverPartners has a pecuniary and parochial interest in ensuring that the FCRPS is not

dismantled and that hydropower continues to be generated at all power projects operated by the

Corps.  RiverPartners also has an interest in ensuring that additional spill and flow that is not

necessary to support a robust and healthy salmon populations not become incorporated into any

Page 11   -    NORTHWEST RIVERPARTNERS MOTION FOR INTERVENTION

amended FCRPS RPA.  Flores Decl. at ¶¶ 4, 10.

In contrast, the Corps is required by law to operate the hydropower projects for a multitude of purposes in addition to hydropower generation, including fish and wildlife protection, recreation, navigation, flood control and water quality.  Accordingly, although RiverPartners certainly supports the multiple purposes of the FCRPS, the Corps' interests are broader than RiverPartners' and therefore the Corps cannot be expected to make all the arguments that RiverPartners would make in defense of this lawsuit and in opposition to any injunction.  *Forest Conservation Council*, 66 F. 3d at 1499 (overturning lower court's denial of intervention and emphasizing that the government must represent the broad public interest and not just the economic and more parochial views of the timber industry).

Moreover, the Corps could conceivably be willing to settle this case on grounds that RiverPartners would find objectionable in light of the Corps' many competing public mandates and federal obligations. Flores Decl. at ¶10.  While the Corps does not pay for the mitigation measures they implement, RiverPartners members' and their constituents and customers *do*.  The fish and wildlife restoration program implemented by the federal government is the largest restoration program for a species anywhere in the nation.  It is RiverPartners' members and their customers who foot that bill, amounting to several hundred million dollars every year. *Id*. at ¶¶7,12.

Under these circumstances, it would strain credulity to argue (as RiverPartners believes Plaintiffs may argue) that the government will *undoubtedly* make every argument that RiverPartners would.  RiverPartners and the government are not in lock-step, and as explained by RiverPartners' Executive Director, "the government simply does not walk in our shoes."). Flores Decl. at ¶10.

Page 12   -   NORTHWEST RIVERPARTNERS MOTION FOR INTERVENTION

RiverPartners has different concerns than the Corps and believes the Corps has gone too far in agreeing to spill and flow measures in the FCRPS BiOp, even while we support it, and has not gone far enough in dealing with avian predators. Flores Decl. at ¶10. While RiverPartners agrees with the plan to eliminate avian predators, it has unsuccessfully urged the Corps to be more aggressive in addressing these predators more quickly. *Id.* The Fish and Wildlife Service, moreover, is required by law to protect the needs of both salmon and birds, but does not need to consider the power needs of RiverPartners' members. The Wildlife Services is entrusted by Congress to deal with predators and again has no obligation to consider the power needs of RiverPartners' members. RiverPartners also cares deeply about the fate of salmon in our region, but does not always view the science the way the federal government does and is at times at logger- heads with federal agency officials on how best to address specific concerns. *Id.*

Courts have routinely found the disparity between the public interests of the government and the private interests of project proponents sufficient to justify intervention. *Forest Conservation Council,* 66 F.3d at 1499 (inadequate representation is most likely to be found when the applicant asserts a personal interest that does not belong to the general public)*; Sierra Club v. Espy*, 18 F.3d 1202, 1207-08 (5th Cir. 1994); *Cnty. of Fresno v. Andrus*, 622 F.2d 436, 438-39 (9th Cir. 1980); *Natural Res. Defense Council v. Costle*, 561 F.2d 904, 912 (D.C. Cir. 1977). As the Ninth Circuit (agreeing with the Third Circuit) recently both recognized and emphasized in rejecting a narrower view of intervention:

> "[t]he reality is that NEPA cases frequently pit private, state, and federal interests against each other. Rigid rules in such cases contravene a major premise of intervention- *the protection of third parties affected by pending litigation*."

*Wilderness Society*, 630 F.3d 1180 (emphasis supplied). For the reasons discussed above, because disposition of this case in Plaintiffs' favor would seriously harm RiverPartners'

Page 13  -    NORTHWEST RIVERPARTNERS MOTION FOR INTERVENTION

interests-- which are not adequately protected by the federal government-- intervention as of right under Rule 24(a) should be allowed as a result.

### B.    RiverPartners Is Also Entitled To Permissive Intervention

As with intervention as of right, motions for permissive intervention are construed liberally in favor of the moving party.  Permissive intervention should be allowed under Rule 24(b) as long as the applicant seeking intervention establishes that:  "(1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims."  *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998).  Under this standard, neither the inadequacy of representation nor a direct interest in the subject matter of the action need be shown.  *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108 (9th Cir. 2002); 7C Charles Alan Wright et al., *Federal Practice and Procedure* § 1911 (3d ed. 2007).

RiverPartners easily meets the test for permissive intervention as well.  RiverPartners' interest in protecting the FCRPS BiOp and accompanying RPA has issues of law and fact in common with Plaintiffs' claims.  As noted above, RiverPartners' application for intervention is timely and will not prejudice the existing parties.  Moreover, RiverPartners' members (as preferred customers of the hydropower generated by the FCRPS, and as a long-time litigant in FCRPS BiOp disputes), can significantly contribute to the Court's resolution of the issues in the underlying case and in the soon-to-be-filed motion for preliminary injunction.  Therefore, permissive intervention on all claims should be granted.  *See generally Sierra Club v. U.S. EPA*, 995 F.2d 1478, 1483 (9th Cir. 1993) (granting intervention to third parties and stating: "Our adversary process requires that we hear from both sides before the interests of one side are impaired by a judgment."); *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 971 (3d Cir. 1998)

Page 14   -    NORTHWEST RIVERPARTNERS MOTION FOR INTERVENTION

(intervention allows entities and individuals affected by NEPA actions to present their positions to the court); *City of L.A.*, 288 F.3d at 397-98 (liberal policy in favor of intervention allows interested parties to express their views before the court).

### IV.  CONCLUSION

For the reasons articulated above, RiverPartners requests that the Court consider and resolve this motion expeditiously, and  grant it intervention as of right or permissive intervention pursuant to Fed. R. Civ. P. 24(a) and (b).

Respectfully submitted this 24th day of April, 2015.

*/s/ Beth S. Ginsberg*
Beth S. Ginsberg, OSB #070890
Jason T. Morgan, WSBA #38346 (Proposed *Pro Hac Vice*)

*Attorneys for (Proposed) Intervenor-Defendant Northwest RiverPartners*

600 University Street, Suite 3600
Seattle, WA 98101
(206) 386-7527
(206) 386-7500 Fax
beth.ginsberg@stoel.com
jason.morgan@stoel.com

CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2015, I filed a true and correct copy of the foregoing

document with the Clerk of the Court for the United States District Court – District of Oregon by

using the CM/ECF system.  Participants in this Case No. 3:13-cv-00655-MO; who are registered

CM/ECF users will be served by the CM/ECF system.

I hereby certify that I have mailed by United States Postal Service the document to the

following non CM/ECF participants:

    United States Attorney's Office
    District of Oregon
    1000 S.W. Third Ave., Suite 600
    Portland, Oregon 97204-2902
    Telephone: (503) 727-1010


                                    _/s/ Beth S. Ginsberg_____
                                    Beth S. Ginsberg, OSB #070890

Page 16  -   NORTHWEST RIVERPARTNERS MOTION FOR INTERVENTION