IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **AUDUBON SOCIETY OF PORTLAND**, *et al.*, | Case No. 3:15-cv-0665-SI |
| Plaintiffs, | **OPINION AND ORDER** |
| v. | |
| **UNITED STATES ARMY CORPS OF ENGINEERS**, *et al.*, | |
| Defendants. | |

Daniel J. Rohlff and Thomas Charles Buchele, EARTHRISE LAW CENTER, 10015 S.W. Terwilliger Boulevard, Portland, OR 97219-7768. Of Attorneys for Plaintiffs.

S. Amanda Marshall, United States Attorney, UNITED STATES ATTORNEY'S OFFICE, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; John  C. Cruden, Assistant Attorney General, Seth M. Barsky, Section Chief, Bradley H. Oliphant, Trial Attorney, U.S. DEPARTMENT OF JUSTICE, Environment and Natural Resources Division, 999 18th Street, South Terrace, Suite 370, Denver, CO 80202; Stephen Finn, U.S. DEPARTMENT OF JUSTICE, Environment and Natural Resources Division, P.O. Box 7611, Washington, D.C. 20044. Of Attorneys for Defendants.

Beth S. Ginsberg, STOEL RIVES, LLP, 600 University Street, Suite 3600, Seattle, WA 98101. Of Attorneys for Intervenor-Defendant Northwest RiverPartners.

Brian C. Gruber and Beth Baldwin, ZIONTZ CHESTNUT, 2101 Fourth Avenue, Suite 1230, Seattle, WA 98121. Of Attorneys for *Amicus Curiae* Confederated Tribes of the Colville Reservation.

**Michael H. Simon, District Judge.**

Before the Court is Plaintiffs' Motion to Compel Completion of Administrative Record, including Plaintiffs' request that Defendants be ordered to supplement the record and to lodge the record before the preliminary injunction hearing that is scheduled for May 8, 2015. Dkt. 20. Although a court is generally limited to reviewing the administrative record in considering actions brought under the Administrative Procedure Act ("APA"), the Court finds that the additional material sought by Plaintiffs fall within a recognized exception to the rule against supplementing the administrative record on judicial review. The Court does not, however, find that the requested expedited schedule for lodging the record, as supplemented, is warranted. Accordingly, as discussed below, Plaintiffs' motion is granted in part.

## STANDARDS

"In general, a court reviewing agency action under the APA must limit its review to the administrative record." *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 992 (9th Cir. 2014). This is to ensure that the reviewing court affords the agency sufficient deference. *Id.* Under the APA, an agency has substantial discretion "to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive." *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 378 (1989). Courts are limited from considering extra-record materials because doing so "inevitably leads the reviewing court to substitute its judgment for that of the agency." *Locke*, 776 F.3d at 992 (quoting *Asarco, Inc. v. E.P.A.*, 616 F.2d 1153, 1160 (9th Cir. 1980)). A reviewing court may not perform a *de novo* review of the agency's action and must "limit[ ] itself to the deferential procedural review that the APA's arbitrary or capricious standard permits." *Id.*

Courts may, however, review extra-record material when:

> (1) it is necessary to determine whether the agency has considered all relevant factors and explained its decision, (2) the agency has relied on documents not in the record, (3) supplementing the record is necessary to explain technical terms or complex subject matter, or (4) plaintiffs make a showing of bad faith.

*City of Las Vegas v. F.A.A.*, 570 F.3d 1109, 1116 (9th Cir. 2009). These exceptions are widely accepted, but are to be "narrowly construed and applied" to ensure that they do not undermine the general rule limiting review to the administrative record. *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2004). The party seeking admission of the extra-record material "initially bears the burden of demonstrating that a relevant exception applies." *Locke*, 776 F.3d at 993.

## BACKGROUND

For more than twenty years, there has been ongoing litigation relating to the operation of federal hydropower dams in the Columbia River Basin, collectively known as the Federal Columbia River Power System ("FCRPS"), and its effect on endangered salmon and steelhead. In 2007, Defendant U.S. Army Corps of Engineers ("Corps"), along with other agencies, jointly released a biological assessment determining that "the existence and operation of the FCRPS alone without mitigation is likely to result in a jeopardy finding" for certain listed salmon and steelhead. To avoid this "jeopardy" outcome, the Corps and other agencies drafted a comprehensive set of "reasonable and prudent alternatives" ("RPAs"). One of these RPAs, RPA 46, called for the reduction of consumption of juvenile salmon and steelhead by double-crested cormorants' ("cormorants")[1]. RPA 46, among other RPAs, was adopted by the National Marine Fisheries Service ("NMFS") in its biological opinions ("BiOps") issued in 2008, 2010, and 2014. In its 2014 BiOp, NMFS calculated that the increase in cormorants on East Sand Island in the Columbia estuary since 2002 has created a "survival gap" of 3.6 percent

---

[1] Although there are other types of cormorants, this opinion shall refer to double-crested cormorants simply as "cormorants."

for upriver steelhead and 1.1 percent for upriver Chinook. NMFS asserted that "it is logical that cormorant management objectives assist" in the goal of reducing this gap.

After NMFS issued its 2014 BiOp, the Corps issued a record of decision adopting FCRPS operations and other actions consistent with the 2014 BiOp's RPAs, including RPA 46 relating to cormorant reduction. The Corps prepared an environmental impact statement ("EIS") relating to cormorant management ("Cormorant EIS").[2] The Cormorant EIS describes the purpose and need of cormorant management to bring cormorant predation to the level identified in RPA 46. The cormorant management plan is to reduce the East Sand Island cormorant population to between 5,380-5,939 nesting pairs. Plaintiffs allege that this will be achieved by shooting nearly 11,000 adult cormorants and destroying approximately 26,000 cormorant nests, either by oiling eggs or by allowing eggs to fail and nestlings to starve after their parents have been shot.

After completing the Cormorant EIS in approximately March 2015, the Corps secured a "depredation permit" from Defendant U.S. Fish and Wildlife Service ("FWS") that allowed the killing of cormorants. This permit also allows for the accidental killing due to misidentification of up to a certain number of Brandt's cormorants and pelagic cormorants.

Plaintiffs filed this action on April 20, 2015. Plaintiffs bring eleven claims for relief, alleging violations of the National Environmental Policy Act ("NEPA"), the APA, the Water Resources Development Act, and the Migratory Bird Treaty Act. Relevant to this motion, Plaintiffs allege that: (1) the Corps violated NEPA by issuing a record of decision implementing RPA 46 without considering reasonable alternatives to improve salmon survival other than killing cormorants or without considering whether killing cormorants will actually increase the number of adult spawning salmon or steelhead; (2) the Corps violated NEPA by defining too

---

[2] The Cormorant EIS is available at http://www.nwp.usace.army.mil/portals/24/docs/environment/eis/cormorants/final_eis_cormorant_feb2015.pdf.

narrowly the purpose of the Cormorant EIS as reducing cormorant predation of juvenile

salmonids; (3) the Corps violated NEPA by failing to take a "hard look" at whether killing

cormorants will achieve the stated purpose and need; (4) the Corps violated the APA by failing

to provide a rational connection between the decision to carry out RPA 46 and an increase in

survival of listed juvenile salmon and steelhead and returning spawning adults to the extent

deemed necessary by the 2014 BiOp; and (5) FWS violated the APA by issuing the depredation

permit without demonstrating a valid justification, because FWS made no effort to verify the

Corps' assertion that killing cormorants will increase the number of listed juvenile salmon and

steelhead that survive and return as spawning adults.

## DISCUSSION

### A. The Requested Supplemental Materials

Plaintiffs seek an order from the Court requiring Defendants to supplement the

administrative record with documents, including communications, email, notes, studies, and

analyses prepared by agency personnel or by outside personnel or entities, that are relevant to

how implementation of the Corps' management plan for cormorants on East Sand Island is likely

to affect the numbers of returning adult salmon and steelhead and whether it is likely to increase

productivity of listed salmon and steelhead adults to the extent called for in RPA 46 in the 2014

BiOp. Plaintiffs argue that the record in this case, although not yet lodged, will be incomplete

because Defendants already have stated that information relating to whether killing cormorants

to reduce predation of juvenile salmonids and steelheads will actually result in increased survival

of those juvenile fish or will actually increase the return of adult spawning salmon or steelhead is

not relevant to the actions and decisions challenged in this case and, thus, will not be part of the

administrative record. The primary information sought by Plaintiffs relates to whether the

number of juvenile salmonids eaten by cormorants reflects "compensatory mortality"—that is,

whether the reduced mortality to salmonids from killing the cormorants will be replaced (or compensated for) by other causes of mortality—or whether it is "additive mortality," meaning a source of mortality that is added to other sources for a combined larger total mortality.

Plaintiffs do not limit their request only to information relating to compensatory mortality, but seek all information regarding the effectiveness of the cormorant management plan to increase surviving juvenile and adult salmon. Plaintiffs argue that such information is essential for the Court properly to review whether the challenged actions and decisions are arbitrary and capricious under the APA or violated the requirements of NEPA. Defendants respond that the Court is limited to the administrative record that was before the agencies and that Plaintiffs fail to demonstrate that any exception applies that would allow extra-record material.

Supplementation of the record may be proper when "necessary to determine whether the agency has considered all relevant factors and has explained its decision." *Lands Council*, 395 F.3d at 1030 (quotation marks omitted). "A satisfactory explanation of agency action is essential for adequate judicial review, because the focus of judicial review is not on the wisdom of the agency's decision, but on whether the process employed by the agency to reach its decision took into consideration all the relevant factors." *Asarco*, 616 F.2d at 1159. Although a court "must not substitute its own judgment for that of the [a]gency," it is required to "engage in a substantial inquiry" of the agency's action. *Nat'l Audubon Soc. v. U.S. Forest Serv.*, 46 F.3d 1437, 1447 (9th Cir. 1993) (quotation marks omitted). This may include reviewing extra-record material, because, as explained by the U.S. Court of Appeals for the Ninth Circuit:

> It will often be impossible . . . for the court to determine whether the agency took into consideration all relevant factors unless it looks outside the record to determine what matters the agency should have considered but did not. The court cannot adequately discharge its duty to engage in a "substantial inquiry" if it is

required to take the agency's word that it considered all relevant
matters.

*Asarco*, 616 F.2d at 1160. Thus, a court may look to extra-record material "only for background information . . . or for the limited purposes of ascertaining whether the agency considered all the relevant factors or fully explicated its course of conduct or grounds of decision." *Id.*

Here, Defendants argue that Plaintiffs are incorrect in their premise that compensatory mortality was not properly addressed because the Cormorant EIS addresses compensatory mortality in a section entitled "Uncertainty and Compensatory Mortality." This section, however, repeatedly states that whether cormorant predation is compensatory or additive is unknown. It also states that the 2014 BiOp does not apply compensatory-mortality analysis to any of the RPAs, which includes RPA 46. It further states that in the Cormorant EIS, the "fish effects analysis" and the "economic analysis" do "not apply compensatory mortality to any expected benefits (economic or juvenile survival) associated with reduced [cormorant] predation; thus benefits from the proposed action are likely maximum benefits that could occur in the absence of compensatory mortality." Cormorant EIS at 4-138.

Defendants also submit with their response to Plaintiffs' motion the declaration of Robert Winters, a Corps employee involved in assembling the Corps' administrative record, and the declaration of Nanette Seto, an FWS employee involved in assembling FWS's administrative record. These declarations both state that FWS's draft analysis (submitted to the Court by Plaintiffs) of whether predation by double-crested cormorants is an additive or a compensatory source of mortality for Snake River steelhead is not relevant to the cormorant reduction at issue in this case and, thus, will not be part of the record. Ms. Seto further states that when an FWS employee emailed her the draft analysis on March 16, 2015, she responded on March 20, 2015, that "while not directly relevant to the Migratory Bird Program's review of a depredation

application" that FWS anticipated receiving from the Corps, she "recognize[d] this draft contains a preliminary analysis that is more directly related to NMFS's FCRPS biological opinion." Dkt. 32 at ¶ 4. The biological opinion referenced by Ms. Seto appears to be the 2014 BiOp, whose RPA 46 is the basis for the cormorant management plan.

The Court concludes that, although Plaintiffs' motion has been filed before the record has been lodged, there are sufficient representations made by Defendants that the record will not include the information sought by Plaintiffs to render Plaintiffs' motion timely. The Court further concludes that the extra-record material sought by Plaintiffs likely will provide relevant background information that will assist the Court in conducting the required "substantial inquiry" and also may provide information necessary for the Court to determine whether the agencies considered all relevant factors in reaching their decisions. In light of the NEPA and APA violations alleged by Plaintiffs, the Court will need access to the requested information in order to determine whether consideration of the effectiveness of the cormorant management plan on salmon and steelhead survival was a relevant factor the agencies should have considered. The fact that RPA 46 calls for a reduction in cormorants does not, by itself, prove that the decisions challenged in this case were based on consideration of all relevant factors. *See, e.g.*, *Forestkeeper v. Benson*, 2015 WL 1012364, at*3 (E.D. Cal. March 5, 2015) (granting motion to supplement record and rejecting as circular agency's argument that its reports were proof that the agency considered all relevant environmental impacts because each report simply "assumes that because a conclusion was reached it must have been based on a valid analysis").

## B.  The Requested Expedited Schedule

Plaintiffs also request that Defendants be ordered to lodge the record, as supplemented, before the hearing on Plaintiffs' motion for preliminary injunction, which is scheduled for

PAGE 8 – OPINION AND ORDER

May 8, 2015. Defendants respond that they are diligently compiling the administrative record, but anticipate it will take approximately 90 days to assemble.

In their preliminary injunction motion, Plaintiffs include nearly 1500 pages of exhibits and also incorporate by reference the 1,157-page Cormorant EIS. Defendants state that they will include as exhibits any additional documents they believe are relevant to their defense against Plaintiffs' motion for preliminary injunction. The Court is satisfied that it will have sufficient evidence on which to decide the preliminary injunction motion and therefore denies in part Plaintiffs' motion for expedited lodging of the record.

## CONCLUSION

Plaintiffs' Motion to Compel Completion of Administrative Record (Dkt. 20) is GRANTED IN PART. Plaintiffs' request to supplement the record is GRANTED. Defendants shall include with the administrative record all documents in the possession, custody, or control of the agencies, including communications, notes, studies, and analysis, prepared by agency personnel or outside personnel or entities, that are relevant to the issue of how or whether implementation of the Corps' management plan for cormorants on East Sand Island or in the Columbia River estuary is likely to affect the number of returning adult salmon or increase productivity of listed salmon and steelhead adults to the extent called for in RPA 46. Plaintiffs' request that the record, as supplemented, be lodged before May 8, 2015 is DENIED. The record, as supplemented, shall be lodged within 90 days from the date of this Order.

**IT IS SO ORDERED**.

DATED this 5th day of May, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

PAGE 9 – OPINION AND ORDER