JOHN C. CRUDEN
Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division
SETH M. BARSKY, Section Chief
BRADLEY H. OLIPHANT, Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
999 18th Street
South Terrace, Suite 370
Denver, CO 80202
(303) 844-1381 (tel)
(303) 844-1350 (fax)
Email:  bradley.oliphant@usdoj.gov
STEPHEN FINN
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044
(202) 305-3284 (tel)
(202) 353-0506 (fax)
E-mail: stephen.finn@usdoj.gov

Attorneys for Federal Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **AUDUBON SOCIETY OF PORTLAND, WILDLIFE DEFENSE FUND, CENTER FOR BIOLOGICAL DIVERSITY, FRIENDS OF ANIMALS,**<br>         **Plaintiffs,**<br><br>     v.<br><br>**U.S. ARMY CORPS OF ENGINEERS, U.S. FISH AND WILDLIFE SERVICE, USDA WILDLIFE SERVICES,**<br>               **Defendants.** | No. 3:15-cv-665-SI<br><br>**FEDERAL DEFENDANTS' MOTION TO STRIKE PORTIONS OF THE DECLARATION OF LINDA R. WIRES** |

## MOTION

Federal Defendants move to strike paragraphs 6, 7, 9, and 12 of the declaration of Linda R. Wires, filed by Plaintiffs in support of its motion for preliminary injunction. Doc. No. 24 (Apr. 30, 2015) ("Wires Declaration"). These paragraphs of the post-decisional, extra-record Wires Declaration do not address whether irreparable harm is likely to occur from implementing the U.S. Army Corps of Engineers ("Corps")' proposed cormorant management plan. Instead, they repeatedly attack the analyses undertaken and the conclusions reached by the Corps and the U.S. Fish and Wildlife Service ("Service") regarding that plan, as well as conclusions reached by the National Marine Fisheries Service ("NMFS"), which is not a party to this case. In short, Plaintiffs seek to use the Wise Declaration to draw this Court into a "battle of the experts," have the Court conduct its own *de novo* review of the underlying scientific data, and reach its own conclusions about those data. That is improper and the Court should strike paragraphs 6, 7, 9, and 12 of the Wires Declaration, references to these paragraphs, and arguments regarding the likelihood of prevailing on the merits based on them.

## MEMORANDUM IN SUPPORT

**I.    Judicial review under the administrative procedure act ("APA") is to be limited to the administrative record prepared by the agency.**

Congress has limited the Court's review Plaintiffs' claims to the highly deferential "arbitrary and capricious" standard and to the administrative record. 5 U.S.C. § 706. Because these principles apply fully at the preliminary injunction stage, *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008), the Court is limited to the record in evaluating Plaintiffs' likelihood of success on the merits in this proceeding.

Accordingly, the Court's role here is not to review the scientific evidence and reach its own conclusions. *Lands Council*, 537 F.3d at 993-94, 1000. It also may not conduct any *de novo* proceedings, or hear evidence and testimony to create its own record. *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 715 (1963); *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Instead, the Court's task is to apply the APA's standard of review "based on the record the

agency presents to the reviewing court." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *Camp*, 411 U.S. at 142 ("focal point for judicial review" of an agency decision "should be the administrative record already in existence, not some new record made initially in the reviewing court"); *see Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560 (9th Cir. 2000) (review "normally is limited to the administrative record in existence at the time of the agency's decision").

## II.  Plaintiff may not use extra-record evidence to dispute agency decisions.

A "judicial venture outside the record can . . . never, under *Camp v. Pitts*, examine the propriety of the decision itself."[1]  To that end, the Ninth Circuit has consistently rejected the notion that consideration of extra-record evidence is ever proper for the purpose of attacking an agency's analysis and conclusions. *Nw. Envtl. Advocates v. NMFS*, 460 F.3d 1125, 1144-45 (9th Cir. 2006); *Asarco, Inc. v. EPA*, 616 F.2d 1153, 1160 (9th Cir. 1980) (extra-record evidence "to determine the correctness or wisdom of the agency's decision is not permitted"); *Inland Empire Pub. Lands Council v. Schultz*, 992 F.2d 977, 981 (9th Cir. 1993) ("We are in no position to resolve this dispute because we would have to decide that the views of Council's experts have more merit than those of the [government's] experts.") (citation and quotation marks omitted); *Alsea Valley Alliance v. Evans*, 143 F. Supp. 2d 1214, 1217 (D. Or. 2001) (granting motion to strike explanation of administrative record because it was offered for its expert opinion, and not to "explain" complex technical information).[2]

Moreover, in cases such as this, which involve an agency's scientific or technical expertise, the Ninth Circuit has recognized that any consideration of extra-record expert testimony that was not before the agency "inevitably leads the reviewing court to substitute its judgment for that of the agency." *Asarco*, 616 F.2d at 1160.  *Asarco* is instructive.  There, the

---

[1] *Envtl. Def. Fund v. Costle*, 657 F.2d 275, 286 (D.C. Cir. 1981).

[2] As discussed *infra*, while there are limited exceptions to the record review rule, none apply here.

Motion to Strike Portions of Wires Decl.                                                                                      2

district court held a multi-day merits hearing in an APA-based suit challenging an EPA order under the Clean Air Act, and allowed testimony from numerous experts. *Id*. at 1156-57. The Ninth Circuit found that, by considering this extra-record expert evidence, the district court "went too far":

> This technical testimony was plainly elicited for the purpose of determining the scientific merit of the EPA's decision. Although the testimony may have served some marginal purpose in allowing the district court to evaluate the EPA's court of inquiry, we can only conclude that the extent of the scientific inquiry undertaken at trial necessarily led the district court to substitute its judgment for that of the agency.

*Id*. at 1161. Thus, as the Ninth Circuit has made clear, the "[c]onsideration of [extra-record] evidence to determine the correctness or wisdom of the agency's decision is not permitted." *Id*. at 1160. In short, post-decisional, extra-record information may never be advanced as a rationalization for either sustaining or attacking an agency's conclusion. *Rybachek v. EPA*, 904 F.2d 1276, 1296 n. 25 (9th Cir. 1990); *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996) (post-decisional information may not be used as rationalization for sustaining or attacking agency's decision). As the Ninth Circuit again recently confirmed when it reversed a district court that improperly considered extra-record materials:

> Just as we will not allow the agency to supply *post hoc* rationalizations for its action, so post-decisional information may not be advanced as a rationalization either for sustaining or attacking an agency's decision.

*San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 603 (9th Cir. 2014), *cert denied sub nom., Stewart & Jasper Orchards v. Jewell*, 135 S. Ct. 948 (2015); *State Water Contractors v. Jewell*, 135 S.Ct. 950 (2015). Reliance on the "declarations of the [plaintiffs'] experts-as-advocates as a basis for rejecting the [agencies' action]," the Ninth Circuit admonished, was reversible error, as it

> [i]n effect … opened the [agency action] to a post-hoc notice-and-comment proceeding involving the parties' experts, and then judgment the [agency action] against the comments received…. The district court … overstepped its bounds here.

*Id*. at 604 (quotations, citations omitted); *see also San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 993 (9th Cir. 2014) (reversing district court that "overstepped the bounds … by opening the administrative record as a forum for the experts to debate the merits" of an agency action).

**III.    The extra-record Wires declaration is replete with post-decisional attacks on the scientific merit of the Corps', the Service's, and even NOAA Fisheries' analysis and conclusions.**

The Wires Declaration runs afoul of well-established precedent and law by repeatedly attacking the correctness of the scientific analysis and conclusions made by the agencies, including NMFS, which is not a party to this case. Thus, Plaintiffs' challenges to NMFS's analysis and conclusions, *see* Pls. Mem. at 6, 11, 18, 20, "are beyond the scope of … review" in this case. *See ALCOA v. BPA*, 175 F.3d 1156, 1160 (9th Cir. 1999) (agency's analysis beyond scope of review where it is not party to action). Even if NMFS were a party, extra-record evidence may never be used to attack the merits of an agency's action. *Jewell*, 747 F.3d 581 at 603. Yet, as the following examples show, these improper challenges to NMFS's, the Corps', and the Service's analyses and conclusions, abound in the declaration:

> "The population target for cormorants was based on NOAA Fisheries' 'survival gap analysis' that was not peer-reviewed nor scientifically rigorous enough to inspire confidence …." Wires Decl. ¶ 6.
>
> "The assumption that a reduction in cormorant numbers will result in an increase in smolts surviving to adulthood is naïve." Wires Decl. ¶ 6.
>
> "The idea advanced by the Corps … is scientifically indefensible." Wires Decl. ¶ 6.
>
> "The Corps has simply not presented any compelling scientific data to bolster the hope that [its management plan] will significantly improve salmon and steelhead runs." Wires Decl. ¶ 6.
>
> "The failure to consider the role of compensatory vs additive mortality … is scientific malpractice." Wires Decl. ¶ 6.
>
> "The USFWS is tasked with not only managing migratory birds, but also protecting them…. [T]his has not happened …." Wires Decl. ¶ 7.
>
> "The EIS implies that this reduction [in cormorants] will not negatively impact the population because the western population was sustainable at 1990 levels.

> However, it is not clear that the population was sustainable at 1990 levels ….” Wires Decl. ¶ 9.
>
> "[T]he EIS has understated both how many birds will need to be taken and the risk to the western population ….” Wires Decl. ¶ 9.
>
> "[T]he proposed plan will lead to cormorants … simply becoming additional casualties … of the already highly mismanaged Columbia River ecosystem.” Wires Decl. ¶ 12.

These various examples show that time and again, Ms. Wires improperly reviews the available science and gives her own "interpretation, opinion and argument of what ultimate conclusions the record can and cannot support." *Alsea Valley Alliance*, 143 F. Supp. 2d at 1216.  In fact, her various attacks culminate in a direct challenge to the fundamental correctness of the agencies' (or any) decision to manage cormorants in this way:

> A model of killing as the approach to cormorant management has become entrenched [and] once again prevails …. despite the irrationality that underlies this approach.

Wires Decl. ¶ 12. In short, the Wires Declaration is plainly offered to challenge the "correctness or wisdom" of the agencies' analyses of scientific data and the conclusions they reached from that information, *Asarco*, 616 F.2d at 1160, regarding the management of Double-Crested cormorants on East Sand Island.  As such, paragraphs 6, 7, 9, and 12 include precisely the type of extra-record attack held to be inadmissible in record review cases by the Supreme Court and Ninth Circuit.  They must therefore be stricken.

### IV.    These portions of the Wires Declaration fit none of the exceptions to the record review rule.

Plaintiff may try to shoe-horn this testimony into a narrow exception to the record review rule,[3] perhaps arguing that it "is necessary to explain technical terms or complex subject matter."

---

[3] Four narrow circumstances exist when judicial review of final agency decisions may go beyond the record:  (1) if necessary to determine whether the agency has considered all relevant factors and has explained its decision; (2) when the agency has relied on documents not in the record; (3) when supplementing the record is necessary to explain technical terms or complex subject matter; and (4) when plaintiffs make a showing of agency bad faith.  *Sw. Ctr.*, 100 F.3d at 1450; *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 943 (9th Cir. 2006).  These exceptions are "narrowly construed and applied," *Lands Council v.*

*Sw. Ctr.*, 100 F.3d at 1450 (citation omitted). The above makes clear, however, that rather than "explain" the record, Ms. Wise repeatedly characterizes it with her own opinions, which were not before the agency prior to its final determination, and which must be disregarded now:

> This material holds independent evidentiary value and is inadmissible because it falls outside the record. In other words, defendants did not have the value of [declarants'] expertise available to them prior to making its final determination. Although [they] may be correct, that is not for the court to determine. The issue is whether the agencies' decision can withstand scrutiny based on the information it had at the time the decision was made. The [declaration] falls outside the scope of this narrow determination.

*Alsea Valley Alliance,* 143 F. Supp. 2d at 1217 (internal citation omitted). The Wires Declaration also does not help determine "whether the agency has considered all relevant factors." *Lands Council*, 395 F.3d at 1030 (citation omitted). In fact, it does not reveal any factors that the agencies should have considered, but failed to do so. While Ms. Wires suggests that the agencies failed to consider the issue of compensatory mortality, Wires Decl. ¶ 6, even a cursory review of the record reveals that to be demonstrably false. *See* e.g., Corps Final Environmental Impact Statement, § 4.6.5 (titled "Uncertainty and Compensatory Mortality").[4] Rather, the Wires Declaration reviews the agency's consideration of this "relevant factor" and opines on whether Ms. Wires agrees with that analysis or conclusion.

## CONCLUSION

Plaintiffs improperly offer the Wires Declaration to support the merits of their case by attacking the scientific merit the agencies' decision. Thus, paragraphs 6, 7, 9, and 12 of the

---

*Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005), and augmentation of the record is allowed only in unusual circumstances. *See Center for Biological Diversity*, 450 F.3d at 943 ("We normally refuse to consider evidence that was not before the agency because 'it inevitably leads the reviewing court to substitute its judgment for that of the agency.'") (citation omitted). Plaintiffs bear the burden of showing that proposed extra-record submission fits one of these narrow exceptions. *See Animal Def. Council v. Hodel*, 840 F.2d 1432, 1437 (9th Cir. 1988).

[4] This document, which will be part of the Corps' administrative record when lodged, is publicly available at http://www.nwp.usace.army.mil/portals/24/docs/announcements/eis/feis_dcco_2015_02_06.pdf (last visited May 6, 2015).

Wires Declaration, references to it, and arguments regarding the likelihood of prevailing on the merits based thereon, should be stricken. *Rybachek*, 904 F.2d at 1296 n.25 (granting motion to strike brief that relies on extra-record material).

Dated: May 6, 2015                                    Respectfully submitted,

                   */s/ Bradley H. Oliphant*
                   BRADLEY H. OLIPHANT, Trial Attorney
                   Wildlife & Marine Resources Section
                   United States Department of Justice
                   999 18th Street, Ste. 370
                   Denver, CO  80202
                   Tel:  (303) 844-1381 | Fax: 303-844-1350
                   oBradley.Oliphant@usdoj.gov

                   Attorneys for Federal Defendants

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 6, 2015, I caused the foregoing to be served upon counsel of record through the Court's electronic service system (ECF/CM).

                *s/ Bradley H. Oliphant*
                BRADLEY H. OLIPHANT